IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALPS PROPERTY & CASUALTY INSURANCE COMPANY, a foreign insurer<br><br>Plaintiff,<br><br>vs.<br><br>TIMOTHY BILLICK, an individual; TBILLICK LAW PLLC, a Washington Professional Limited Liability Company; and BANK OF ENGLAND, a foreign bank corporation<br><br>Defendants. | No. 2:21-cv-00916<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff ALPS Property & Casualty Insurance Company (ALPS) submits the following Complaint for Declaratory Relief.

## I.   INTRODUCTION

1.1   This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C §§ 2201 and 2202. ALPS seeks a determination that it does not owe a duty to defend or indemnify Tim Billick and/or TBillick Law, PLLC (hereinafter collectively, "Billick") for the acts or omissions forming the basis ALPS Claim No. B2113065, Policy number ALPS 26540 (hereinafter, the "Underlying Claim.")

## II. PARTIES

2.1 Plaintiff ALPS Property & Casualty Insurance Company is a foreign insurer organized under the laws of the state of Montana with its principal place of business in the state of Montana.

2.2 Defendant Tim Billick is a citizen of the State of Washington, who resides in King County, Washington.

2.3 Defendant TBillick Law, PLLC is a Washington Professional Limited Liability Company with its principal place of business in King County, Washington. Tim Billick is the sole member of TBillick Law, PLLC.

2.4 Defendant Bank of England is a foreign bank corporation organized under the laws of the state of Arkansas with a principal place of business in England, Arkansas.

## III. JURISDICTION AND VENUE

3.1 This court has jurisdiction over this claim pursuant to 28 U.S.C § 1332 as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and diversity amongst the parties is complete.

3.2 Venue is proper with this Court pursuant to 28 U.S.C. §1391 as this case involves a claim for insurance coverage stemming from the alleged losses that occurred in King County, Washington.

## IV. FACTS

**A. Background**

4.1 This matter arises out of a claim under a policy of insurance issued by ALPS to Billick seeking coverage for claims asserted by the Bank of England involving alleged wire fraud.

4.2 Defendant Tim Billick is an attorney in Seattle, Washington.

4.3     In January 2021, Billick was retained by an entity purporting to be Martiro IT to resolve a settlement agreement dispute allegedly involving Opticon, Inc., a company based in Renton, Washington.

4.4     On April 1, 2021, Billick received $529,950.08 into his IOLTA account via wire transfer that he believed to have come from Opticon to fund the settlement in Martiro's favor.

4.5     On or around April 9, 2021, Billick transferred $520,000 of the $529,950.08 in his IOLTA account to a foreign bank account pursuant to the wiring instructions from the entity purporting to be Martiro.

4.6     On or around April 19, 2021, Billick received two additional wire transfers into his IOLTA account, which Billick believed were from Opticon to further fund the settlement.

4.7     On or around April 23, 2021, Billick transferred $435,000 to Martiro based on the wire instructions previously provided by Martiro.

4.8     On or around April 27, 2021, Billick transferred $745,000 to a foreign bank account based on wiring instructions received from the entity purporting to be Martiro.

4.9     The individuals with whom Billick was communicating were not legitimate representatives of Martiro or Opticon.

4.10    On or around May 10, 2021, Billick received a letter purportedly from Dennis Lan of Lan & Associates, P.C. alleging that on April 1, 2021, Bank of England wired $529,950.08 to Billick's IOLTA account based on fraudulent wire instructions in a mortgage payoff letter.

4.11    The May 10, 2021 Lan letter demanded that Billick return the full amount of the fraudulently wired funds.

4.12     Billick advised Lan that he had already wired the funds to another account on instructions from what he had believed to be a legitimate client.

**B.     Billick's Claim and ALPS' Response Thereto**

4.13     On May 21, 2021, ALPS received tender from Billick seeking defense and indemnity under the ALPS policy.

4.14     ALPS promptly acknowledged the May 21, 2021, letter and initiated a coverage investigation.

4.15     On or about June 17, 2021, ALPS issued a letter to Billick advising that it agreed to provide him with a defense of the actual or potential claims arising out of the wire fraud allegations subject to an express reservation of rights.

**C.     The ALPS Policy**

4.16     ALPS issued a professional liability policy to TBillick Law, PLLC, numbered ALPS26540 (the "ALPS Policy"). The ALPS Policy incepted on August 10, 2020, with a cancellation date of August 10, 2021.

4.17     The ALPS Policy carries a Limit of Liability in the amount of $100,000 per claim, with a $300,000 aggregate.

4.18     Billick is listed as a Named Insured Attorney on the ALPS Policy.

4.19     The Insuring Agreement for the Coverage part in the ALPS Policy contains the following language, in pertinent part:

> **A.     COVERAGE**
>
> Subject to the **Limit of Liability**, exclusions, conditions and other terms of this **Policy**, the **Company** agrees to pay on behalf of the **Insured** all sums (in excess of the **Deductible** amount) that the **Insured** becomes legally obligated to pay as **Damages**, arising from or in connection with A **CLAIM** FIRST MADE AGAINST THE **INSURED** AND FIRST

REPORTED TO THE **COMPANY** DURING THE **POLICY PERIOD**, provided that all of the following conditions are satisfied:

1. The **Claim** arises from a **Wrongful Act** that occurred on or after the **Retroactive Coverage Date** set forth in Item 2 of the **Declarations**;

2. At the **Effective Date** of this **Policy**, no **Insured** knew or reasonably should have known or foreseen that the **Wrongful Act** might be the basis of a **Claim**;

3. Notice of the **Claim** or the **Wrongful Act** was not given nor required to be given to any other insurer prior to the **Effective Date**; and

4. The **Claim** is not otherwise covered under any other insurance policy that the **Company** has issued to the **Named Insured**.

B.  **DEFENSE AND CLAIM EXPENSES**

1. For any **Claim** covered under this **Policy**, the **Company** shall have the right and the duty to defend such **Claim** even if any or all of the allegations of the **Claim** are groundless, false or fraudulent, but shall have no obligation to appoint legal counsel to defend a **Claim** that is not the subject of a pending civil action, arbitration, or similar proceeding seeking the recovery of compensatory damages. The **Company** shall have the right to appoint legal counsel in the **Company's** sole discretion.

2. The **Company** shall pay **Claim Expenses** in accordance with the terms of this **Policy**. The **Company** shall not have a duty to defend or to pay such expenses as to any **Claim** not covered under this **Policy** and shall have the right to seek reimbursement from any **Insured**, who shall promptly provide such reimbursement, for any amount paid by the **Company** in defending any such non-covered **Claim**, including any amount paid in defending a non-covered **Claim** that is asserted together with one or more covered **Claims**.

. . .

> The right to reimbursement of **Claims Expenses** will only apply to the costs the **Company** has incurred after the **Company** notifies the **Insured** in writing that coverage might not exist under the Policy and that the **Company** is reserving the **Company's** right to terminate the defense or the payment of **Claims Expenses** and to seek reimbursement for **Claims Expenses**.

ALPS-LPL-BASIC (01-18)

    4.20    The ALPS Policy contains the following definitions which are relevant to the above insuring agreement:

> C. **Claim** means a demand for money or services including, but not necessarily limited to, the service of suit or institution of arbitration or alternative dispute resolution proceedings against the **Insured**.
> . . .
>
> D. **Claim Expenses** means:
>
>     1.    Fees charged by any attorney(s) designated by the **Company** to defend a **Claim** or otherwise represent an **Insured**;
>
>     2.    All other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a **Claim** (including a suit or proceeding arising in connection therewith), if incurred by the **Company**, or if incurred by the **Insured** with the prior written consent of the **Company**;
>
>     3.    Any supplementary payments incurred or reimbursed by the **Company** under Section 1.D.
>
> **Claim Expenses** does *not* mean *nor* include:
>
>     4.    Salaries or other compensation of regular employees or officials of the **Company** or the **Named Insured**.
> . . .
>
> E. **Computer Systems** means computers, information systems, servers, hardware, software, and associated input and output devices, data storage devices, networking equipment, back up facilities and any other associated or connected electronic

devices, including mobile devices.

H.  **Damages** means any:

1. Monetary award by way of judgment or final arbitration, or any settlement; and

2. Civil liability which may be imposed upon an **Insured** under § 813(a) of the federal Fair Debt Collection Practices Act (codified at 15 U.S.C. § 1692k(a)), as may hereafter be amended from time to time.

**Damages** does *not* mean *nor* include any:

3. Punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, including, without limitation, any consequential or incidental damages, attorney's fees or costs, or pre-judgment or post-judgment interest resulting therefrom, regardless against whom the same are levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding;

4. Awards deemed uninsurable by law;

5. Injunctive, declaratory, or other equitable relief, or costs or fees incident thereto;

6. Restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured;

7. Injury or damage to, destruction of, loss of, or loss of use of any funds or property; or

. . .

H.  **Declarations** means the Policy Declarations attaching to this **Policy** for the current **Policy Period** listed in Item 4 of the Policy Declarations.

I.  Deductible means the **Deductible** amount for "Each **Claim**" stated in Item 6 of the **Declarations**. The **Deductible** is described further in Section 4.A.

O. **Insured** means the **Named Insured** listed in item 1 of the **Declarations** and each of the following, but solely for **Claims** arising from **Professional Services** performed for and on behalf of the Named Insured or a Predecessor Law Firm:

   1. An **Attorney** who is, at the time a **Claim** is first made, or who was, at the **Effective Date** of the **Policy**, a principal, partner, shareholder, member or other owner or employee of the **Named Insured**, and who is or was identified in Item 3 of the **Declarations;**

   . . .

P. **Limit of Liability** means, with respect to **Claims** first made and first reported during the **Policy Period**, the "Each **Claim**" **Limit of Liability** and the "Aggregate" **Limit of Liability**, as applicable and as listed in Item 5 of the **Declarations**. The **Limit of Liability** with respect to **Claims** first made and first reported during the **Policy Period** includes the amount of any applicable **Deductible** and is described further in Section 4.B.

   **Limit of Liability** means, with respect to **Claims** first made and first reported during any **Extended Reported Period**, the applicable **Limit of Liability** further described in Section 5.C.

W. **Professional Services** means services or activities performed for and on behalf of the **Named Insured** or a **Predecessor Law Firm** and rendered solely to other as;

   1. As **Attorney** is an attorney-client relationship on behalf of one or more clients applying the Attorney's specialized education, knowledge, skill, labor, experience and/or training, including pro bono services;
   . . .

   **Professional Services** does _not_ mean _nor_ include any:
   . . .
   8. Obligations or services assumed by or performed under any contract other than one to provide **Professional Services**;

. . .

  z. **Wrongful Act** means an actual or alleged**:**

    1. Act, error or omission in **Professional Services** that were or should have been rendered by the **Insured**;

. . .

ALPS-LPL-BASIC (01-18).

  4.21 The ALPS Policy contains the following exclusion pertaining to dishonest, criminal, intentionally wrongful or harmful acts:

  SECTION 3 – EXCLUSIONS

  THIS **POLICY** DOES NOT APPLY TO ANY **CLAIM** ARISING FROM OR IN CONNECTION WITH:

  A. Any dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error or omission committed by, at the direction of, or with the consent of an **Insured**, or any **Personal Injury** arising from or in connection with such conduct, subject to Section 6.A. ("innocent insured coverage");

. . .

ALPS-LPL-BASIC (01-18)

  4.22 The ALPS Policy also contains the following exclusion pertaining to conversion, misappropriation, and wrongful disbursement:

  SECTION 3 – EXCLUSIONS

  THIS **POLICY** DOES NOT APPLY TO ANY **CLAIM** ARISING FROM OR IN CONNECTION WITH:

. . .

  H. Any conversion, misappropriation, wrongful disbursement, improper commingling or negligent supervision by any person of client or trust account funds or property, or funds or property of any other person, held or controlled at any time by an Insured in any capacity or under any authority, including any loss or reduction in value of such funds or property;

ALPS-LPL- BASIC (01-18)

4.23   The ALPS Policy also contains the following exclusion pertaining to fee disgorgement:

> SECTION 3 – EXCLUSIONS
>
> THIS **POLICY** DOES NOT APPLY TO ANY **CLAIM** ARISING FROM OR IN CONNECTION WITH:
>
> . . .
>
> I.   Any dispute over fees or costs, or any **Claim** that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held or controlled at any time by an **Insured**;

ALPS-LPL-BASIC (01-18)

## V.   THERE IS AN ACTUAL JUSTICIABLE CONTROVERSY

5.1   The Coverage Part of the ALPS Policy provides coverage for all sums that the "Insured" becomes legally obligated to pay as "Damages," arising from or in connection with a "Claim" first made against the "Insured" and first reported to the "Company" during the "Policy Period."

5.2   There is an actual and justiciable controversy as to whether the Coverage Part of the ALPS Policy is triggered for the claims asserted against Billick in the Underlying Claim.

5.3   The ALPS Policy defines "Damages" to mean any monetary award by way of judgment or final arbitration, or any settlement or any civil liability which may be imposed upon the insured under section 813(a) of the Federal Fair Debt Collection Practices Act. "Damages" does not include restitution, reduction, disgorgement, or set-off of any fees, costs, consideration, or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured.

5.4 There is an actual and justiciable controversy as to whether the claims in the Underlying Complaint qualify as "Damages" as that term is defined by the ALPS Policy.

5.5 The ALPS Policy defines "Wrongful Act" to mean an act, error, or omission in Professional Services that were or should have been rendered by the Insured.

5.6 There is an actual and justiciable controversy whether the claims involve a "Wrongful Act" as that term is defined.

5.7 The ALPS Policy defines "Professional Services" to mean services or activities performed for and on behalf of the named insured or a predecessor law firm and rendered solely to others as an attorney in an attorney-client relationship.

5.8 There is an actual and justiciable controversy whether Billick was performing "Professional Services" as that term is defined.

5.9 The ALPS Policy specifically excludes coverage for any claim arising from a dishonest, fraudulent, criminal, malicious, or intentionally wrongful act, error, or omission committed by, at the direction of, or with the consent of an insured.

5.10 There is an actual and justiciable controversy as to whether claims by Billick arise out of dishonest, fraudulent, criminal, or intentionally wrongful acts.

5.11 The ALPS Policy specifically excludes coverage for any claim arising from any conversion, misappropriation, wrongful disbursement, improper commingling, or negligent supervision by any person of client or trust account funds or property, or funds or property of any other person, held or controlled at any time by an Insured in any capacity or under any authority, including any loss or reduction in the value of such funds or property.

5.12    There is an actual justiciable controversy as to whether Billick converted, misappropriated, wrongfully disbursed, or negligently supervised funds or property when he wired funds to a fraudulent entity in a foreign bank.

5.13    The ALPS Policy specifically excludes coverage for any claim arising from any dispute over fees or costs, or any claim that seeks the return, or reimbursement of fees or costs, or other property held or controlled at any time by the insured.

5.14    There is an actual and justiciable controversy as to whether claims made by the Bank of England result from a dispute over fees and or property held or controlled by Billick.

## VI.    RESERVATIONS

6.1    ALPS reserves the right to amend this Complaint to include any other coverage defenses that may become evident during the course of discovery, or which are otherwise currently unknown or unknowable on ALPS' part.

6.2    ALPS further reserves the right to amend this Complaint to include such other coverage defenses that may arise due to future conduct of any parties or third parties hereto.

## VII.    CLAIM FOR DECLARATORY JUDGMENT

7.1    Pursuant to 28. U.S.C §§ 2201 and 2202, ALPS seeks a judicial declaration of its rights and duties under the ALPS Policy.

7.2    ALPS is entitled to a Declaratory Judgment in its favor, specifically including a judicial determination that it does not owe any defense or indemnity coverage obligations to Billick or TBillick Law PLLC for claims asserted against them in regard to the wire fraud claims that are the subject of the Underlying Claim.

## VIII. REQUEST FOR RELIEF

WHEREFORE, ALPS, having specifically alleged the foregoing, now requests the following relief:

8.1 For a determination of the rights and obligations of the parties hereto under the ALPS Policy.

8.2 For a judicial declaration that ALPS does not owe any defense or indemnity obligations to Tim Billick or TBillick Law PLLC, for any of the claims asserted against them in the Underlying Claim.

8.3 For all interest as allowed by applicable law.

8.4 For attorney's fees and costs allowed by applicable statute and law.

8.5 For other and further relief as the Court deems just and equitable.

DATED this 9th day of July, 2021.

LETHER LAW GROUP

*/s/ Thomas Lether*
Thomas Lether, WSBA #18089
*/s/ Eric J. Neal*
Eric J. Neal, WSBA #31863
1848 Westlake Avenue N, Suite 100
Seattle, WA 98109
P: (206) 467-5444/F: (206) 467-5544
tlether@letherlaw.com
eneal@letherlaw.com
*Attorneys for ALPS Property & Casualty Insurance Company*